UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| E. ERIC GUIRARD & ASSOCIATES, A PROFESSIONAL LAW CORPORATION | CIVIL ACTION |
| VERSUS | NO. 07-9334 |
| AMERICA FIRST INSURANCE COMPANY | SECTION "L" (5) |

**ORDER & REASONS**

Before the Court is the Defendant's Motion for Summary Judgment as to Plaintiff's claims for loss of business income. For the following reasons, this motion IS DENIED.

**I.    BACKGROUND**

This case arises out of a dispute regarding insurance coverage for the Plaintiff's law firm located at 1010 Common Street in New Orleans, Louisiana, which was damaged during Hurricane Katrina. On August 28, 2007, the Plaintiff filed suit in state court against America First Insurance Company ("America First"), which provided Plaintiff with insurance coverage for property damage, business interruption and loss of income. On December 5, 2007, America First removed the case to this Court. The parties do not dispute that at the time of the storm, Plaintiff was insured by America First pursuant to Policy No. BOP9867657.

During Hurricane Katrina, Plaintiff's New Orleans office was damaged and Plaintiff was unable to operate its business out of that office for a period of five months. At the time of Hurricane Katrina, Plaintiff's law firm was owned by two shareholders, Thomas Pittenger and E. Eric Guirard, and was in the business of litigating personal injury cases on a contingency fee

1

basis. Both Pittenger and Guirard have recently been disbarred. *In re Guirard*, 11 So. 3d 1017, 1030 (La. 2009). As a result, E. Eric Guirard & Associates, APLC, no longer exists as a law firm.

The insurance policy in effect at the time of Hurricane Katrina was a Commercial Protector Coverage policy, and provided coverage for business income losses relating to property damage to the insured's premises. The policy provided that the insured may recover the "actual loss" of Business Income sustained due to the necessary suspension of "operations during the period of restoration" when the insured's operations are suspended because of "direct physical loss of or damage to property" as described in the policy's declaration. The policy defines "Business Income" to include only two items:

> (i) Net Income (Net profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and
> (ii) Continuing normal operating expenses incurred, including payroll.

The policy also provides coverage for "extended business income" for a specified period of time after the claimant's period of restoration has ended and Plaintiff has begun operations at the repaired property. Coverage for "extended business income" occurs when an insured incurs a business income loss that continues after his business or office is restored. Under the policy, the insured may recover actual loss of business income beginning with the time that the covered damaged property is "actually repaired, rebuilt or replaced and 'operations' are resumed" and ending on the earlier of either the date on which the insured could restore operations that would "generate the Business Income amount that would have existed if no physical loss or damage had occurred" or "30 consecutive days after" the date on which the insured's property is repaired and

he resumes operations. Plaintiff repaired his property and resumed operations in its New Orleans office no later than February 1, 2006.

America First paid Plaintiff $178,671 on its business income coverage claim for the period beginning on September 1, 2005 through October 31, 2005. Defendant reached this number by calculating Plaintiff's pre-loss daily gross income for its New Orleans location during the eight months preceding Hurricane Katrina, including expenses, then compared this number to the Plaintiff's actual income and expenses at its New Orleans office after Katrina and through February 1, 2006. Although Plaintiff's gross revenue declined after October 31, 2005 until February 1, 2006, its expenses similarly declined, resulting in a higher net income than the firm's projected net income, based on its pre-Katrina sales and expenses. Plaintiff asserts that it has not been adequately compensated under the policy. Specifically, Plaintiff maintains that in calculating the amount paid on its business income coverage claim Defendant failed to take into account the contingency fee nature of Plaintiff's revenue.

## II. PRESENT MOTION

Defendant has filed a Motion for Summary Judgment on Plaintiff's claim for lost income. In its motion, America First asserts that (1) the Plaintiff's policy provides coverage only for loss of business income resulting from physical damage to Plaintiff's premises; (2) only Plaintiff's "actual losses," defined as its net income and continuing operating expenses during the period of restoring its damaged office, are compensable under the policy; (3) Plaintiff's alleged losses occurring after it reopened its office are not compensable under the "extended business income" provision, or any other portion of the policy; and (4) Plaintiff cannot show that America First adjusted its claim in an arbitrary or capricious manner, and that Plaintiff's claim for bad faith

3

should be denied.

The Plaintiff has responded, arguing that America First's calculation of business income loss was inadequate because it failed to take into account the contingency fee nature of Plaintiff's income revenue. Specifically, Plaintiff explains that because it represents clients on a contingency fee basis, "work is performed on a client's file and only once a recovery is made is an attorney fee charged and expenses reimbursed." Therefore, the actual revenue for the attorney's work will not appear on the firm's books until well after the work is completed.

Additionally, Plaintiff contests the method used to calculate loss of income, claiming that America First "neglected to consider the method of revenue generation by a Plaintiff's personal injury firm." Based on its calculation, America First found that Plaintiff did not incur a business loss after October 31, 2005. Plaintiff argues that because it represents clients on a contingency fee basis, the revenue and net profit on the books for the months following Hurricane Katrina was not for work done during that time. Plaintiff claims that the method used by Defendant would be proper if Plaintiff's attorneys worked on an hourly fee basis, which they do not. Plaintiff alleges that during the five months that its office was closed it lost "potential clients that would have otherwise been signed up by the firm." Plaintiff maintains that a more realistic view of its income loss can be calculated by reviewing the historical data for client sign-ups before and after Hurricane Katrina. By Plaintiff's calculation the average sign-ups per month declined 69 percent for the time period following Hurricane Katrina through March 2009, resulting in a loss of gross revenue of $1,327,450.

### III. LAW & ANALYSIS

Summary judgment is appropriate in a case if "there is no genuine issue as to any

material fact." Fed. R. Civ. P. 56(c). "The moving party bears the burden of demonstrating that there exists no genuine issues of material fact." *In re Vioxx Products Liability Litigation*, 501 F.Supp.2d 776, 781 (E.D. La. 2007). In determining whether a genuine issue of material fact exists, the Court must "review the facts drawing all inferences most favorable to the party opposing the motion." *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 137 (5th Cir. 2004). But because "only those disputes over facts that might affect the outcome of the lawsuit under governing substantive law will preclude summary judgment," questions that are unnecessary to the resolution of a particular issue "will not be counted." *Phillips Oil Co. V. OKC Corp.*, 812 F.2d 265, 272 (5th Cir. 1987).

Under Louisiana law, an insurance policy "is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003). The court's role in interpreting insurance contracts "is to ascertain the common intent of the parties to the contract." An insurance contract must be "construed according to the entirety of its terms and conditions." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. La. 2007).

Courts considering policy language similar to the business income loss provision at issue in this case have held that only those losses attributable to the destruction of the office in question were covered because those were the only losses that resulted from physical damage to the insured's property. *United Air Lines, Inc. v. Ins. Co. of State of Pa.*, 439 F.3d 128 (2nd Cir. 2006). As the policy makes clear, the calculation of business income loss excludes "any Net Income that would likely have been earned as a result of any increase in the volume of business due to favorable business conditions." Furthermore, courts have concluded that business income

5

coverage continues until physical operations are restored, and *not* when profits return. *Children's Place Retail Stores, Inc. v. Federal Ins. Co.*, 829 N.Y.S.2d 500 (N.Y. Sup. Ct. 2007) (finding business interruption coverage did not continue until date the store would have been able to achieve its prior income or until World Trade Center was rebuilt).

While the policy is clear on the aforementioned points, the policy's definition of business income loss is silent as to the inclusion of contingency fee income. Faced with similar circumstances, at least one court in this jurisdiction has held that a loss of business income policy did not exclude recovery for a decrease in contingency fees following Hurricane Katrina. *See Orrill, Cordell, & Beary, L.L.C. v. CNA Ins. Co.*, No. 07-8234, 2009 U.S. Dist. LEXIS 20867 (E.D. La. Mar. 16, 2009). In *Orrill, Cordell, & Beary, L.L.C.*, involving an identical loss of business income policy, the insured law firm claimed that it suffered an actual loss of business income based on a decrease in contingency fees. Although there was a decrease in contingency fee income, the insured experienced an increase in overall income due to an increase in hourly fees. Defendants argued that the policy did not insure for contingency fee losses, but for business income as a whole. The insured claimed that it sustained an undisputed loss from the projected contingency fee income, which affected overall net income. The court found that the policy did not exclude coverage for income lost from a particular stream of income and that public policy "and the overall purpose of insuring for business income losses are best served in providing coverage here." *Id.* at *7-*8. The court noted that the policy language and intent of the parties did not foreclose coverage, and that the policy definition of business income was ambiguous on its face. *Id.* at *8.

Similar to *Orrill, Cordell, & Beary, L.L.C.*, the language of the policy in the present case

6

does not preclude coverage from a particular stream of income or coverage from contingency fee income in particular. Where an insured's income revenue is generated on a contingency fee basis, it may be appropriate to consider the nature of the insured's income in a calculation of business income loss. This is true even in a case where the Plaintiff's income after sustaining the damage exceeded the pre-damage income because their costs had decreased. Plaintiff should have an opportunity to prove that they would have made even more money had their physical property not been damaged. Therefore, factual questions necessarily remain concerning the nature and extent of the Plaintiff's damages, when those damages occurred, and whether those damages were caused by the physical loss to the building or by some other cause, such as fluctuations in the market. Accordingly, summary judge is inappropriate in this case.

IV. **CONCLUSION**

For the reasons set forth above, IT IS ORDERED that Defendant's Motion for Summary Judgment (Rec. Doc. 27) IS DENIED.

New Orleans, Louisiana, this 12th day of March, 2010.

_____
UNITED STATES DISTRICT JUDGE