UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| E ERIC GUIRARD & ASSOCIATES | CIVIL ACTION |
| VERSUS | NUMBER 07-9334 |
| AMERICA FIRST INSURANCE COMPANY | SECTION "L" (5) |

**ORDER & REASONS**

Currently pending before the Court is the Defendant's Motion for Reconsideration (Rec. Doc. 44). asking the Court to reconsider its previous Order denying Defendant's Motion for Summary Judgment (Rec. Doc. 43). After considering the evidence presented by the parties, as well as their briefs and oral argument, IT IS ORDERED that Defendant's Motion for Reconsideration IS GRANTED. The Court issues this Order & Reasons to clarify and, to the extent necessary, amend its previous ruling as follows.

**I.   BACKGROUND**

This case arises out of a dispute regarding insurance coverage for the Plaintiff's law firm located at 1010 Common Street in New Orleans, Louisiana, which was damaged during Hurricane Katrina. On August 28, 2007, the Plaintiff filed suit in state court against America First Insurance Company ("America First"), which provided Plaintiff with insurance coverage for property damage, business interruption and loss of income. On December 5, 2007, America First removed the case to this Court. The parties do not dispute that at the time of the storm, Plaintiff was insured by America First pursuant to Policy No. BOP9867657.

During Hurricane Katrina, Plaintiff's New Orleans office was damaged and Plaintiff was unable to operate its business out of that office for a period of approximately five months. At the time of Hurricane Katrina, Plaintiff's law firm was owned by two shareholders, Thomas

Pittenger and E. Eric Guirard, and was in the business of litigating personal injury cases on a contingency fee basis. Both Pittenger and Guirard have recently been disbarred. *In re Guirard*, 11 So. 3d 1017, 1030 (La. 2009). As a result, E. Eric Guirard & Associates, APLC, no longer exists as a law firm.

The insurance policy in effect at the time of Hurricane Katrina was a Commercial Protector Coverage policy, and provided coverage for business income losses relating to property damage to the insured's premises. The policy provided that the insured may recover the "actual loss" of Business Income sustained due to the necessary suspension of "operations during the period of restoration" when the insured's operations are suspended because of "direct physical loss of or damage to property" as described in the policy's declaration. The policy defines "Business Income" to include only two items:

> (i) Net Income (Net profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other businesses; and
> (ii) Continuing normal operating expenses incurred, including payroll.

The policy also provides coverage for "extended business income" for a specified period of time after the claimant's period of restoration has ended and Plaintiff has begun operations at the repaired property. Coverage for "extended business income" occurs when an insured incurs a business income loss that continues after his business or office is restored. Under the policy, the insured may recover actual loss of business income beginning with the time that the covered damaged property is "actually repaired, rebuilt or replaced and 'operations' are resumed" and ending on the earlier of either the date on which the insured could restore operations that would "generate the Business Income amount that would have existed if no physical loss or damage had occurred" or "30 consecutive days after" the date on which the insured's property is repaired and

he resumes operations. Plaintiff repaired his property and resumed operations in its New Orleans office no later than February 1, 2006.

America First paid Plaintiff $178,671 on its business income coverage claim for the period beginning on September 1, 2005 through October 31, 2005. Defendant reached this number by calculating Plaintiff's pre-loss daily gross income for its New Orleans location during the eight months preceding Hurricane Katrina, including expenses, then comparing this number to the Plaintiff's actual income and expenses at its New Orleans office after Katrina and through February 1, 2006. Although Plaintiff's gross revenue declined after October 31, 2005 until February 1, 2006, its expenses similarly declined, resulting in a higher net income than the firm's projected net income, based on its pre-Katrina sales and expenses. Nonetheless, Plaintiff asserts in this lawsuit that it has not been adequately compensated for business income loss under the policy. Specifically, Plaintiff maintains that in calculating the amount paid on its business income coverage claim Defendant failed to take into account the contingency fee nature of Plaintiff's revenue.

On August 25, 2009, Defendant filed a Motion for Summary Judgment as to Plaintiff's claims for loss of business income. In this motion, America First argued that (1) the Plaintiff's policy provides coverage only for loss of business income resulting from physical damage to Plaintiff's premises; (2) only Plaintiff's "actual losses," defined as its net income and continuing operating expenses during the period of restoring its damaged office, are compensable under the policy; (3) Plaintiff's alleged losses occurring after it reopened its office are not compensable under the "extended business income" provision, or any other portion of the policy; and (4) Plaintiff cannot show that America First adjusted its claim in an arbitrary or capricious manner, and that Plaintiff's claim for bad faith should be denied.

The Plaintiff then responded, arguing that America First's calculation of business income loss was inadequate because it failed to take into account the contingency fee nature of Plaintiff's income revenue. Specifically, Plaintiff explains that because it represents clients on a contingency fee basis, "work is performed on a client's file and only once a recovery is made is an attorney fee charged and expenses reimbursed." Therefore, the actual revenue for the attorney's work will not appear on the firm's books until well after the work is completed.

Additionally, Plaintiff contested the method used to calculate loss of income, claiming that America First "neglected to consider the method of revenue generation by a Plaintiff's personal injury firm." Based on its calculation, America First found that Plaintiff did not incur a business loss after October 31, 2005. Plaintiff argued that because it represented clients on a contingency fee basis, the revenue and net profit on the books for the months following Hurricane Katrina was not for work done during that time. Plaintiff claims that the method used by Defendant would be proper if Plaintiff's attorneys worked on an hourly fee basis, which they do not. Plaintiff alleged that during the five months that its office was closed it lost "potential clients that would have otherwise been signed up by the firm." Plaintiff maintained that a more realistic view of its income loss can be calculated by reviewing the historical data for client sign-ups before and after Hurricane Katrina. By Plaintiff's calculation the average sign-ups per month declined 69 percent for the time period following Hurricane Katrina through March 2009, resulting in a loss of gross revenue of $1,327,450.

On March 15, 2009, the Court issued an Order & Reasons denying Defendant's motion, holding that factual issues remain "concerning the nature and extent of the Plaintiff's damages, when those damages occurred, and whether those damages were caused by the physical loss to the building or by some other cause, such as fluctuations in the market." *Order & Reasons*, Rec.

Doc. 43, at 7.

## II. PRESENT MOTION

In their motion for reconsideration, Defendant raises four points which, in their opinion, require the Court to alter its previous decision. First, they argue that the Plaintiff's insurance policy unambiguously limits coverage to the thirty (30) day time period after restoration of the business location, thereby precluding coverage for cases that Plaintiff would have signed up during the restoration period but that would not have been resolved until much later. Second, Defendant argues the Court's original ruling will allow Plaintiff a double recovery because he will be able to recover for contingent fee income lost due to both decreased sign ups and to decreased resolution of cases. Third, Defendant asserts that the Plaintiff has not presented enough evidence that the business income losses were due to physical damage to its business location to create a genuine issue of material fact. Fourth, they argue that Plaintiff has conceded that its bad faith claims lacked merit and can be disposed of via summary judgment.

The Plaintiff has responded and asserts that the Court clearly understood the issues at the time it issued the previous ruling, as demonstrated by the Order & Reasons, and that the previous decision was correct. They assert that the insurance policy was ambiguous as to what losses are to be included as business income loss and that because Plaintiff's *only* source of income was contingency fee income, the policy must have been intended to cover income of this type. Due to this ambiguity, they claim, factual questions that must be determined at trial include what losses are covered, when those losses occurred, and the nature and extent of the covered losses. Finally, they argue that while the issue of coverage for contingency fee income may be a novel question for courts, it may not be a novel question for insurance companies. Therefore, they claim that penalties for bad faith may still apply.

5

## III. LAW & ANALYSIS

Since the Federal Rules of Civil Procedure do not specifically recognize a motion for reconsideration, such motions are treated as either a motion to alter or amend judgment under Rule 59(e) of the Federal Rules of Civil Procedure or a motion for relief from judgment or order under Rule 60(b) of the Federal Rules of Civil Procedure. *See Ford v. Elsbury*, 32 F.3d 931, 937 (5th Cir.1994); *Lavespere v. Niagra Mach. & Tool Works, Inc*., 910 F.2d 167, 173 (5th Cir.1990); Fed.R.Civ.P. 59(e), 60(b). If the motion is filed within ten days of the rendition of judgment, it shall be governed by Rule 59(e); if the motion is filed after ten days of the rendition of judgment, it shall be governed by Rule 60(b). *Lavespere*, 910 F.2d at 173. In the present case, the Court entered its ruling on March 15, 2010. The Defendants' motion for reconsideration was filed on March 25, 2010. Accordingly, the Defendants' motion was filed less than ten days after the Court's ruling and, as such, is subject to the standards of Rule 59(e).

A Rule 59(e) motion for reconsideration of a judgment is an extraordinary remedy which courts should use sparingly. *Peterson v. Cigna Group Ins*., 2002 WL 1268404, *1 (E.D. La. June 5, 2002)(citing Miller & Kane, Federal Practice & Procedure: Civil 2d § 2810.1, p. 124; *Fields v. Pool Offshore, Inc*. 1998 WL 43217 (E.D.La. Feb. 3, 1998); *Bardwell v. Sharp*, 1995 WL 517120, *1 (E .D.La. Aug. 30, 1995)). The remedy is so extraordinary that the United States Court of Appeals for the Fifth Circuit has stated that denial of Rule 59(e) motions is favored. *See id*. The district court has considerable discretion in deciding whether to reopen a case pursuant to Rule 59(e). *See id*. Courts in this district hold that a moving party must satisfy at least one of the following criteria to prevail on a Rule 59(e) motion: (1) the motion is necessary to correct a manifest error of fact or law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is

justified by an intervening change in the controlling law. *Flynn v. Terrebonne Parish Sch. Bd.*, 348 F.Supp.2d 769, 770 (E.D.La.2004). However, the remedy should not be used to "relitigate prior matters that should have been urged earlier or that simply have been resolved to the movant's dissatisfaction." *Peterson*, 2002 WL 1268404 at * 1. Defendant in this case asserts that reconsideration is necessary to correct a manifest error of fact or law.

Under Louisiana law, an insurance policy "is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code." *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003). The court's role in interpreting insurance contracts "is to ascertain the common intent of the parties to the contract." An insurance contract must be "construed according to the entirety of its terms and conditions." *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 181 (5th Cir. La. 2007).

### A.      Coverage under the policy

The insurance policy in this case clearly and unambiguously limits recovery for business income loss to the period of time ending thirty (30) days after the restoration of the damaged property. Since the restoration was completed on February 1, 2006, the period would be limited to March 3, 2006, 30 days after restoration. During this covered time period, there would have been two different types of revenue generating activities or events occurring in Plaintiff's contingent fee income law firm: (1) cases that had previously been signed up would have been resolved, generating immediate fees; and (2) new cases would have been signed up, generating future fees. Plaintiff may recover lost business income from both of these streams of income, assuming, of course, that they are able to prove at trial that they actually sustained these losses.

It is also clear that Plaintiff is not entitled to receive a double recovery for any business income loss that it has suffered. On the other hand, it is clear that Defendant cannot avoid

compensating the Plaintiff for a decrease in sign-ups during this period simply by paying for a decrease in case resolutions which occurred during this period. Instead, Plaintiff should have an opportunity to prove at trial that they would have made even more money had their physical property not been damaged. It will be the task of the jury to determine what the Plaintiff's *total* business income loss was and to compensate them accordingly. To the extent that these categories of contingent fee income might overlap, if at all, the jury will be tasked with making the appropriate adjustments. Similarly, the jury will be responsible for determining how much Plaintiff would have earned during the extended restoration period but for the physical damage incurred to Plaintiff's property. For these reasons, the Court now supplements its previous order to clarify its holding in the foregoing respects.

### B. Bad faith penalties

The Defendant also argues that the Plaintiffs have offered no evidence to support their claims for bad faith penalties and did not contest the issue in their original response to Defendant's motion for summary judgment. Further, Defendant argues that because coverage for decreased sign-ups is a novel issue, they could not have been in bad faith when they denied coverage. Plaintiff has responded and argues that while this may be a novel question for courts, it is not likely that it is a novel question for the insurance company, who is presumably experienced in construing the policy language at issue. Furthermore, the Plaintiff takes the position that factual issues remain regarding the motivation behind Defendant's decision not to compensate the Plaintiff for any business income loss that occurred after October 31, 2005. However, the Court recognizes that the claims are of a novel and complex nature. Thus, it is likely that the insurance company was faced with some uncertainty when evaluating the Plaintiff's claims. Furthermore, they did not deny coverage altogether, but instead provided

Plaintiff compensation based on their good faith calculations of business income loss. For these reasons, the Court now amends its previous decision and grants summary judgment to the Defendant regarding the Plaintiff's bad faith claims.

## IV.  CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Defendant's Motion for Reconsideration (Rec. Doc. 44) IS GRANTED. IT IS FURTHER ORDERED that the Court's previous Order & Reasons (Rec. Doc. 43) is clarified and amended as discussed herein.

New Orleans, Louisiana, this 29th day of April, 2010.

_____
UNITED STATES DISTRICT JUDGE